CHARLES QUIN, Administrator, &c., of RICHARD QUIN, deceased, Respondent, v. JAMES T. LLOYD, Appellant.

Where the complaint alleges an amount of indebtedness of the defendant to the plaintiff for services performed, without stating the value of such services nor their extent, but claims that the indebtedness is "for the balance remaining due after sundry payments made by the defendant," and the answer is merely a denial of the allegations of the complaint,— *Held*, reversing the court below, that on the trial, the defendant, was under these pleadings, entitled to prove payment to the plaintiff on account of the services alleged.

*McKyring* v. *Bull* (16 N. Y. R., 297), commented upon and distinguished.

After a party has been permitted to testify without objection to transactions between himself and a deceased person, in an action between himself and the representatives of such deceased person, it is error to strike out this evidence, even on the motion of such representative.

A party, against whom a witness is called and examined, cannot lie by and speculate on the chances, first learning what the witness testifies and then, when he finds the testimony unsatisfactory, objecting either to the competency of the witness or to the form or substance of the testimony.

(Cause argued October 1st, 1869, and decided December 21st, 1869.)

APPEAL from a judgment of the General Term of the Superior Court of New York, affirming a judgment for the plaintiff on the report of a referee.

This action was brought to recover for work, labor, and services done and performed by the intestate going to Eng-

land, services there, and returning, for the defendant, on account of which the balance alleged to be due was $333.07, in gold coin, and also for the sum of $296.31, alleged to be the further indebtedness of the defendant to the intestate for services rendered in New York.

The allegations of the first count of the complaint were as follows : 1st. That, in the lifetime of said Richard Quin, and some time in the month of August, in the year one thousand eight hundred and sixty-three, in the city of New York, in the State of New York, the above defendant engaged the said Richard Quin to proceed to England, and there to perform certain work, labor, and services as a surveyor and draughtsman, for which the said defendant promised to pay the said Richard Quin the sum of fifteen dollars per week in American gold coin.

That, in accordance with such engagement, the said Richard Quin proceeded to the city of London, in England, and there performed certain work, labor, and services for the defendant as a draughtsman and surveyor, whereby the said defendant became, on the fifteenth day of July, one thousand eight hundred and sixty-four, indebted to the said Richard Quin in the sum of three hundred and thirty-three dollars and seven cents, in American gold coin, *being the balance remaining due, after sundry payments made by defendant to said Richard Quinn.*

The answer was a general denial.

The action was tried before a referee, and in the progress of the trial the defendant was sworn as a witness in his own behalf, and testified without objection to the time when the intestate commenced working for him, the fact of his going to England, and in what capacity, the time of his remaining there, and of his return; to the fact of payments by the defendant, and the rate of his wages in New York as draughtsman part of the time, and as foreman after Culver left, and the time when Culver left; and the direct examination of the witness was closed. At the next meeting of the parties before the referee on a subsequent day, the plaintiff's counsel

moved that the testimony of the defendant, Lloyd, be struck out, on the ground that under section 399 of the Code of Procedure " the defendant was an incompetent witness," and the motion was granted and defendant excepted.

At a subsequent stage of the trial, the defendant offered in evidence certain receipts given by the intestate, for moneys paid to him by defendant on account. These were excluded, and defendant excepted.

A motion was made by defendant to amend his answer, which was denied, and the case states that the defendant excepted.

The referee reported for the plaintiff, and from the judgment as modified in the General Term of the Superior Court of the city of New York, the defendant appealed to this court.

*Robert Sewell* and *James F. Pierce*, for the appellant, upon the point of the admissibility of payments, cited *Gilbert* v. *Cram* (12 How., 455); *Morrow* v. *Cougar* (3 Abb., 328); Anon., 2 Code. R., 67; *Schermerhorn* v. *Van Allen* (18 Barb., 29); *Andrews* v. *Bond* (16 id., 633); *McKyring* v. *Bull* (16 N. Y., 298); Chitty on Pleadings, vol. 1, p., 100; *Brown* v. *Cornish* (Ld. Raymond, 217); *Hutton* v. *Morse* (1 Salk., 394).

*James M. Sheehan,* on that question relied upon *McKyring* v. *Bull* (16 N. Y., 297); *Monell* v. *Irving Fire Ins. Co.* (Ct. of Appeals, 1865). He also cited, on the question of the propriety of the refusal of the referee to allow the defendant to amend by setting up payment, *Fagen* v. *Dawson* (2 Duer 153); *Hunt* v. *Hudson River Ins. Co.* (id., 481); *N. Y. Marbled Iron Works* v. *Smith* (id., 481); *Grosvenor* v. *Atlantic Fire Ins. Co.* (1 Boswell, 469).

Lott, J. The referee, before whom the issues were tried, erred in excluding the receipts given by the deceased in his lifetime to the defendant, for moneys paid by him to the deceased on account.

Conceding the general rule to be that payments, either as an entire defence or in mitigation of damages, must be pleaded, this case is an exception to it. ·

The plaintiff, in his complaint, alleges, as the first cause of action, an employment by the defendant of Richard Quinn, the deceased, in August, 1863, to go to England, there to perform certain work, labor and services as a surveyor and draughtsman, for which he was to be paid the sum of fifteen dollars per week in American gold coin; that the deceased, in accordance with such employment, went to England and performed certain work there, whereby, as it is then averred, "the said defendant became, on the fifteenth day of July, one thousand eight hundred and sixty-four, indebted to the said Richard Quinn in the sum of three hundred and thirty-three dollars and seven cents in American gold coin, being the balance remaining due after sundry payments made by defendant to said Richard Quinn." There is no statement showing when the work commenced or ended, or of the time employed, or from which it can be inferred. There is, therefore, not a fact stated by which it can be known to how much compensation the deceased was entitled at the price he was to be paid. The averment that there was an indebtedness by the defendant to the deceased, as "the balance remaining due after sundry payments made by defendant to said Richard Quinn," and the denial of all the allegations in the complaint as to the employment and indebtedness, involved an issue upon the facts above stated and denied, not only of the agreement and of the time which the deceased worked, but necessarily of the different payments made, so as to determine what, in fact, was the balance of the defendant's debt. That balance could not be ascertained without an inquiry as to the amount of the payments, as well as the value of the work performed. The case of *McKyring* v. *Bull* (16 N. Y. Rep., 297), relied on by the respondent, cannot be considered an authority to sustain the referee's decision and the judgment of the court below. In that case, the complaint alleged that the plaintiff entered into the employment of the defendant on

a particular day, and continued there in doing labor and service for him to a specified and fixed date, and then averred that such work and services were worth the sum of $650, and then it concluded as follows: "that there is now due to this plaintiff, over and above all payments and offsets on account of said work, the sum of one hundred and thirty-four dollars, which said sum defendant refuses to pay." It will be seen by this statement, that the term of service and its value were both alleged, from which it appeared that a much larger sum had become payable to the plaintiff than he claimed. The learned judge who gave the prevailing opinion in the case says, in reference to the allegation, that there was due to the plaintiff at the commencement of the suit, over and above all expenses, &c., the sum there named, "is a mere legal conclusion from the facts previously stated. Its nature is not changed by the addition of the words, 'over and above all payments.' No new fact is thereby alleged. The plaintiff voluntarily limits his demand to a sum less than that to which, under the facts averred, he would be entitled."

In the case under review, as I have before stated, no facts are alleged from which it can be known what the work, at the stipulated price agreed to be paid, was worth, and consequently there is nothing to show that the claim made was less than upon the facts stated he was entitled to.

We are not to be controlled by a decision upon facts so materially different in all respects from those in this case. It may be proper to add that two of the judges, Denio, Ch. J., and Johnson, J., dissented from that decision, and Paige, J., expressed no opinion.

My conclusion therefore, is, that on the ground above stated (and without expressing an opinion on the other questions presented), the judgments appealed from must be reversed, and a new trial ordered, costs to abide the event.

Woodruff, J. The plaintiff, by his complaint herein, alleges that the defendant engaged the plaintiff's intestate to

proceed to England and there perform work, labor, and services as a surveyor and draughtsman, for which he promised to pay him fifteen dollars per week in American gold coin. That in accordance with such engagement the intestate proceeded to England, and there performed certain work, etc., whereby the defendant became on the 15th July, 1864, indebted to the intestate in the sum of $333.07 in American gold coin, being *the balance remaining due after sundry payments* made by the defendant.

This allegation, I think, invited an issue upon the question whether a balance of $333.07, was or was not due, and the answer of the defendant put that allegation in issue.

It was wholly unnecessary for the plaintiff to sue for a balance as such; he might allege the contract, performance on his part and claim payment, and then, if the defendant desired to prove payments, he must allege payment in his answer; but where the plaintiff sues for a balance, he voluntarily invites examination into the amount of indebtedness, and the extent of the reduction thereof by payments, &c.

It was, therefore, error to exclude proof of payments made by the defendant *on account*, and the receipts given by the intestate therefor.

The referee also erred in striking out the testimony of the defendant, not only because as to some of the facts to which he testified, they did not appear to have formed part of transactions or conversations had by him personally with the deceased, but also for another reason, which was fatal to the motion.

The defendant was sworn and examined without objection. Certain questions put to him were excluded, but none of the testimony which he gave was objected to, and his direct examination was closed, and the reference was adjourned to a future day. There is no pretence of any surprise or misapprehension of the fact that the witness called and sworn was the defendant. Any and every objection which could be taken to his testifying, or to his testimony, was apparent on the face of the proceedings; and yet at a subsequent hearing,

the referee struck out the testimony on the alleged ground that the defendant was incompetent to testify. This will not do. A party against whom a witness is called and examined, cannot lie by and speculate on the chances, first learn what the witness testifies, and then when he finds the testimony unsatisfactory, object either to the competency of the witness or to the form or substance of the testimony.

It is not the case, which sometimes occurs, where on cross-examination, or in a subsequent stage of the trial, the incompetency of evidence appears, though apparently competent when given; e. g., oral proof of an agreement, which on cross-examination appears to have been in writing, or proof of parol negotiations, &c., where it afterward appears that the oral treaty was, are afterward embodied in a written covenant or agreement, and like cases.

The counsel may have been careless in permitting testimony to be given without objection, which, perhaps, would have been excluded if objected to ; but this will not authorize the referee to strike it out after it has been received. This is a rule especially important, since parties are permitted to testify. The utmost fairness should be observed in the conduct of their examination, and if the adverse party desires to object to transactions with a deceased, he must do so in season, and not wait till he learns what they are, and then, if they bear unfavorably on his case, strike them out.

On these grounds, the judgment must be reversed.

All the judges concurring, judgment reversed.